UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

CLOVER M. BARRETT                                              **AMENDED COMPLAINT**

                                    Plaintiff,                **PLAINTIFF DEMANDS**
                                                               **TRIAL BY JURY**

                    -against-
                                                              **Case No.: 1:22-cv-01658**

THE CITY OF NEW YORK
POLICE OFFICER RAYMOND WHITE
POLICE OFFICER MICHAELANGELO HIDALGO
a/k/a  POLICE OFFICER MICHAEL HIDALGO
POLICE OFFICER JOHN DOE
BETTY LUGO
CARMEN A. PACHECO,
PACHECO & LUGO PLLC A/K/A
PACHECO LUGO ATTORNEYS AT LAW

                                    Defendants.
------------------------------------------------------- x

        Plaintiff, CLOVER M. BARRETT, as for her Amended Complaint,  respectfully alleges
as follows:

## PRELIMINARY STATEMENT

1.        This is a civil rights action in which Plaintiff, CLOVER M. BARRETT, (hereinafter,

"BARRETT" or "Plaintiff" ) seeks damages to redress the deprivation, under color of law of

rights secured to her under the Fourth Fifth and Fourteenth Amendments of the United States

Constitution.   The Defendants conspired together, acted in concert, and participated in the

wrongful arrest, detention, and malicious prosecution of the Plaintiff, thereby depriving Plaintiff

of her constitutional rights secured by the Fourth and Fourteenth Amendments of the United

States Constitution. Defendants willfully and intentionally directed, instigated and acted in

concert under color of state law subjected Plaintiff to, *inter alia,* false arrest, false imprisonment,

detention, filing of false reports and malicious prosecution for acts which Plaintiff was innocent.

As a result of the violation of her constitutional rights, Plaintiff suffered physical, mental and psychological injuries.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a), 42 U.S.C. Sections 1981, 1983, 1985, and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. Pendant jurisdiction, pendant party jurisdiction and supplementary jurisdiction over Plaintiff's state law claims is asserted.

3.      Venue is properly laid within the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391(b), in that the Plaintiff resides within, and the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## THE PARTIES

4.      Plaintiff, CLOVER M. BARRETT, was and is a citizen of the United States and at all times relevant hereto, resides in Brooklyn, New York. Plaintiff is an attorney at law and maintains her law practice in the County of Kings, City and State of New York.

5.      Defendant THE CITY OF NEW YORK (hereinafter the "CITY"), is a municipal corporation, pursuant to the laws of the State of New York which operates the New York City Police Department ("NYPD") and as such is the public employer of the Defendant Police officers herein .

6.      Defendant, Police officer, RAYMOND WHITE Tax# 916903, (hereafter, "WHITE"), was a NYPD police officer, and at all times relevant hereto acted in that capacity as the agent, servant and employee of Defendant, CITY and within the scope of their employment.  WHITE is being sued in his official and individual capacity.

7.      Defendant, Police officer, MICHAEL HIDALGO, a/k/a MICHAELANGELO HIDALGO, Tax#936043, (hereafter, "HIDALGO"), was a NYPD police officer and at all times relevant hereto, acted in that capacity as the agent, servant and employee of Defendant, CITY and within the scope of his employment.  HIDALGO is being sued in his official and individual capacity.

8.      At all relevant times hereto, the Defendant Police officers were acting under color of state and local law and are sued in their individual and official capacities.  At all relevant times hereto, Defendant CITY was responsible for making and enforcing the policies of NYPD and was acting under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, and usages, of the State of New York and/or the City of New York.

9.      Police Officers JOHN DOE ("John Doe Police Officers") refer to police officers who acting under color  of law and authority as police  officers employed by NYPD and who participated in the relevant acts in support of the claims herein but whose identities are unknown to Plaintiff at this time.

10.      At all relevant times hereto, Defendant, Betty Lugo, ("Lugo") was an attorney at law who maintained her law practice in the County of Kings, City and State of New York. Lugo is a former Assistant District Attorney and in November 2021 was elected a Civil Court Judge in New York County.  Lugo presently presides in the Kings County Civil Court as a Civil Court Judge.

11.      At all times relevant times hereto, Defendant, Carmen Pacheco ("Pacheco") was and is an attorney at law who maintains her law practice in the County of Kings, City and State of New York.

12.     At all relevant times hereto, Defendant, Pacheco & Lugo, PLLC ("the PLLC") was a law firm co-owned and operated by the Defendants, Betty Lugo and Carmen Pacheco with its place of business in the County of Kings, City and State of New York.

13.     The Defendants, Carmen Pacheco, Betty Lugo and Pacheco & Lugo, PLLC (collectively "Pacheco & Lugo") are "politically wired" in that the Defendants are politically connected to top law enforcement officials and the New York Police Department which affords them favoritism treatment.

14.     At all times mentioned herein, the individual Defendants, underscoring the fact that they were attorneys, instigated, pursued, directed, and acted under color of law with NYPD to bring about the unjustified arrest, detention and malicious prosecution of Plaintiff.

## NOTICE OF CLAIM

15.     Within 90 days following the successful termination of the prosecution of Plaintiff arising from this incident, Plaintiff filed written Notice of Claim with Defendant, CITY.  This matter has not been settled or otherwise disposed of.

## FACTS

16.     Plaintiff is the owner of 338 Atlantic Avenue, Brooklyn, New York ("338 Atlantic Avenue") which she purchased in 2005.

17.     Defendant, Pacheco, and Defendant Lugo, are the owners of adjoining property, 340 Atlantic Avenue, Brooklyn, New York ("340 Atlantic Avenue") which is held in the name of 340 Atlantic Avenue, LLC.

18.     At the time that Plaintiff purchased 338 Atlantic Avenue, a pipe rail on the property line between the 338 Atlantic Avenue and 340 Atlantic Avenue, separated the two properties.

19.     During or prior to October, 2009, Pacheco & Lugo cut down the pipe rail and replaced it with a metal rail approximately 12 inches past the property line onto the northeast corner of 338 Atlantic Avenue.

20.     When Plaintiff demanded that Defendants remove the encroaching metal rail, Defendant, Pacheco, hurled a racial slur at the Plaintiff, calling her a "Black bitch" and saying to the Plaintiff, "Why don't you go back to where you came from? We were better off before you came here."

21.     In October 2009, Plaintiff commenced an action in the Kings County Supreme Court for the removal of the encroachment ("the 2009 State Case").  In October 2013, the 2009 State Case was marked off the court's calendar without resolution and the matter was never restored.

22.     On August 15, 2018, Pacheco & Lugo hired a welder to cut down the encroaching metal rail and reinstalled the rail approximately 4 inches farther onto Plaintiff's property, situating the metal rail approximately 16 inches past the property line onto Plaintiff's property.  When Plaintiff demanded the removal of the reinstalled metal rail, the Defendants refused, hurling racial slurs at the Plaintiff.

23.     On August 18, 2018, Plaintiff directed her contractor to remove the encroaching metal rail as well as a piece of concrete slab that was also situated on Plaintiff's property.

24.     On August 18, 2018, the Pacheco & Lugo Defendants called 911 and falsely reported to several police officers that Plaintiff cut and removed their metal fence ("the metal rail") as well as stone from their property.  Demanding that the Plaintiff be arrested, the Pacheco & Lugo Defendants falsely reported to the police that the metal rail had been in place for numerous years, despite the fact that the metal rail was reinstalled on plaintiff's property only three days prior. The Pacheco & Lugo Defendants further falsely reported to the police that plaintiff 's removal of

the metal rail was in violation of a court order obtained in a lawsuit which plaintiff lost to the defendants and which lawsuit established that the Pacheco & Lugo defendants owned the disputed property by adverse possession

25.     Plaintiff  provided undisputed information to the responding NYC police officers that the metal rail and stone that plaintiff removed was in fact located on plaintiff's property and further disputed Pacheco and Lugo's claim that plaintiff lost a lawsuit to them or that they obtained ownership to Plaintiff's property by adverse possession.

26.     After the responding police officers investigated the complaint, the officers determined that the matter was a civil dispute and advised the parties to resolve their dispute in civil court.

27.     Later that same day, angered that the police did not arrest the Plaintiff, the Pacheco & Lugo Defendants went to the 84th Precinct and filed a new complaint against the Plaintiff.  In filing the new complaint, the Pacheco & Lugo defendants, reiterated their false statement that Plaintiff removed a metal rail and stone located on the their property and further, that both a Court and the Department of Buildings had ordered Plaintiff not to remove the rail.

28.     Between August 18, 2018 and August 30, 2018 the Pacheco & Lugo defendants reiterated their false statement to NYPD that plaintiff's removal of the metal rail was in violation of a court order in a lawsuit which plaintiff lost to the Pacheco & Lugo Defendants.

29.     Between August 18, 2018 and August 30, 2018, the Pacheco & Lugo Defendants reiterated their false statements to the NYPD that Plaintiff cut away stone that was located on the defendants' property.

30.     Despite the earlier determination by several police officers that the matter was a civil one, Police officers at the 84th Pct of the New York City Police Department generated a new

complaint based on the same allegations made by Defendants which were investigated and determined to be a civil matter.

31.      Upon information and belief Pacheco & Lugo Defendants were able to generate a new complaint because of Defendants' relationship and political connection with high ranking law enforcement officials and members of the New York City Police Department, including Police officer, HIDALGO.

32.      In support of their new generated complaint, Defendants reiterated their false statements that the metal rail removed by the Plaintiff, was in place for numerous years and that in cutting down the fence, Plaintiff violated a court order because Plaintiff lost a lawsuit against the Defendants regarding the placement of the rail on Plaintiff's property which the Defendants obtained by adverse possession.  In addition, Lugo falsely reported that on August 15, 2018, Plaintiff was ordered by the Department of Buildings (DOB) not to remove the metal rail and that Plaintiff cut down the rail in violation of DOB's order.

33.      Between and including August 28, 2018 and September 7, 2018, the Pacheco & Lugo defendants repeated their false allegations for the specific purpose of procuring Plaintiff's arrest.

34.      In their investigation, NYPD received no documentation that Plaintiff violated any court order or that Plaintiff lost any lawsuit to the Defendants regarding the metal rail.

35.      In their investigation, NYPD found that Defendants' claim that Plaintiff was directed by DOB not to remove the metal rail was false.

36.      On August 29, 2021, WHITE informed Plaintiff that based upon NYPD investigation findings, the complaint by the Pacheco & Lugo defendants was believed to be a civil matter rather than a criminal one.

37.     Despite informing Plaintiff that the investigation showed the matter to be Civil rather than criminal, on August 30, 2018, WHITE informed Plaintiff that after conferring with others, it was determined that he had to arrest the Plaintiff.

38.     When Plaintiff asked whether she could be given a desk appearance ticket, WHITE informed Plaintiff that the Pacheco & Lugo defendants were pushing for the Plaintiff's arrest and that he would have to discuss that factor with them.  WHITE thereafter informed the Plaintiff that the Defendants insisted on Plaintiff's arrest claiming that they were in fear of their lives. WHITE, however stated to the Plaintiff that he was not going to arrest the Plaintiff at that time but that he would contact her after September 10, 2021 when he returned from his vacation. WHITE made it clear to the Plaintiff that if he wanted to arrest her he could because he knew that she lived and worked at 338 Atlantic Avenue.

39.     At the time that White and NYPD made a determination to arrest the Plaintiff, WHITE and NYPD knew there was no probable cause to arrest the Plaintiff . Based on his investigation, White and the NYPD had reason to believe that there was no credibility or legitimacy to the Pacheco & Lugo Defendants' complaint and therefore no probable cause to arrest the Plaintiff.

40.      At the time that White and NYPD made a determination to arrest the Plaintiff, WHITE and NYPD knew that the matter was a civil dispute and knew that no crime was committed.

41.     At the time that White and NYPD made a determination to arrest the Plaintiff, WHITE and NYPD had no evidence that the Plaintiff had committed any crime to warrant her arrest.

42.     At the time that WHITE and NYPD made a determination to arrest the Plaintiff, White and NYPD had no evidence that the Plaintiff had violated any court order in removing the metal rail from her property and had no evidence from the Pacheco & Lugo defendants to support their

false claim that they won a lawsuit against the Plaintiff which gave ownership to Plaintiff's property by adverse possession.

43.     On August 30, 2018, NYPD created a "WANTED FLYER" for the Plaintiff with instructions to distribute the flyer to "Non-law Enforcement Personnel", to "News Media" and to the Incident Notification Response Unit ("INRU").

44.     On August 30, 2018, WHITE requested that a NYPD investigation card ("I-Card") be issued for the apprehension of the Plaintiff.  The I-Card listing the Plaintiff as a perpetrator, stated that she was a lawyer with court cases in Brooklyn Supreme Court on September 6, 2018 and September 7, 2018.

45.     Based on his investigation, WHITE and the NYPD had reason to believe there was no credibility to the Pacheco & Lugo Defendants' complaint and therefore no probable cause to issue the wanted Flyer and the I-card.

46.     On September 7, 2018, around 8 p.m., while Plaintiff was in front of her building, at 338 Atlantic Avenue, Pacheco & Lugo, without any justification or legitimate purpose, called the police and once again, falsely reported that Plaintiff was attempting to destroy their property and that they were being threatened.   Upon the police arrival, the Pacheco & Lugo defendants stated "we are attorneys" pointed to the Plaintiff, calling her a "Perp", and demanded that Plaintiff be arrested.

47.     It appeared that most of the responding police officers were from the 84th precinct except for HIDALGO, who was from the 75th precinct.

48.     Police officer, HIDALGO is a Hispanic male who seemed to be familiar with the Pacheco & Lugo Defendants and spoke privately with them. From the time he arrived on the scene HIDALGO took on an aggressive stance with the Plaintiff.  Without any probable cause to

arrest the Plaintiff, HIDALGO orchestrated the arrest of Plaintiff.  As a member of the NYPD HIDALGO had reason to believe that there was no credibility or legitimacy to the Pacheco & Lugo defendants' complaint and therefore no probable cause to arrest the Plaintiff.

49.     On September 7, 2018, at the time that the Pacheco & Lugo defendants called the police Plaintiff was on her premises, engaged in lawful activity.  There was no lawful reason for the Pacheco & Lugo defendants to call the police and enlisted the help of the NYPD and particularly HIDALGO, who appeared to be acting on behalf of the Pacheco & Lugo defendants, to procure a malicious and false arrest upon the plaintiff.

50.     HIDALGO, knew or should have known that there was no probable cause to arrest the Plaintiff.  HIDALGO, however acting in concert with the Pacheco & Lugo defendants procured the arrest of the Plaintiff without probable cause.

51.     Based upon the patently and verifiable false, fraudulent and malicious actions of the Pacheco & Lugo defendants, Plaintiff was placed in handcuffs, by NYPD, wrongfully detained and arrested, taken to the 84th precinct, placed in a cell behind bars and charged with crimes that she did not commit, before she was released after several hours.

52.     On September 8, 2018, around midmorning, while Plaintiff was in front of her building, at 338 Atlantic Avenue, Pacheco and Lugo walked by and saw the Plaintiff. Shocked and angered to see the Plaintiff whom they caused to be arrested the night before, Pacheco Lugo made racial slurs referring to the Plaintiff as a "Black Bitch" and once again, without any justification or legitimate purpose, called the police.  Once again, the Pacheco & Lugo defendants falsely reported that Plaintiff was attempting to destroy their property and demanded that Plaintiff be arrested.

53.     Fearing that the police would curry favor with Pacheco & Lugo again, Plaintiff retreated inside her home.  Fortunately for the Plaintiff the two responding officers made clear to Pacheco and Lugo that they were aware of what was going on and told Pacheco and Lugo that if they continue to harass the Plaintiff or interfere with her property it would be them that would be arrested.

54.     On or about October 21, 2018, based on the Defendants' false statements and fabricated evidence, NYPD filed a Felony Criminal Complaint against the Plaintiff in the Kings County Criminal Court.

55.     On October 21, 2018, two months after the complaint and two months into the investigation, the NYPD, without any evidence  that Plaintiff committed any crime or violated any court order and without any evidence that Plaintiff lost a lawsuit to the Pacheco & Lugo Defendants regarding their claim of adverse possession to plaintiff's property,  filed a Felony Complaint against the Plaintiff.   At the time that NYPD filed the Felony Complaint on October 21, 2018, NYPD knew or should have know that the Felony Complaint was false.

56.     On November 30, 2018, Lugo on behalf of the Pacheco & Lugo Defendants executed a corroborating affidavit in support of the Felony Complaint.  At the time that Lugo, a former Assistant District Attorney, executed the corroborating affidavit in support of the Felony Complaint, Lugo and the Pacheco & Lugo Defendants knew that the information in the complaint was false and the Defendant knew she was executing a false affidavit.

57.     Between August 18, 2018 and June 12, 2019, the Pacheco & Lugo Defendants, knowingly, intentionally and maliciously made false and fraudulent statements to law enforcement personnel, including the New York Police Department ("the NYPD"), the Kings County District attorney's office ("the Kings County DA"), and the Richmond County District

Attorney's office, ("the Richmond County DA") with the corrupt intention to deceive and to ensure that Plaintiff would be arrested and criminally prosecuted.

58.     Between August 18, 2018 and June 12, 2019,  NYPD, knew or should have known that they were engaged in procuring the false arrest and malicious prosecution of  the Plaintiff

59.     Between August 18, 2018 and June 12, 2019,  NYPD knowingly and  intentionally procured the arrest and malicious prosecution of the Plaintiff despite having reason to believe that  there was no credibility or legitimacy to the Pacheco & Lugo defendants' complaint and therefore no probable cause to arrest and prosecute the Plaintiff.

60.     Based on Pacheco & Lugo's false statements and deliberate fabrication of evidence, on September 7, 2018, Plaintiff was arrested without probable cause and charged with a Felony. NYPD knew or should have known that there was no probable cause to arrest the Plaintiff.

61.     Based on Pacheco & Lugo's false statements and deliberate fabrication of evidence, the Plaintiff was arrested and prosecuted until June 12, 2019, when the prosecution requested the dismissal of the charges. NYPD knew or should have known that there was no probable cause to arrest and prosecute the Plaintiff.

62.     NYPD acted in concert with Pacheco & Lugo to bring about the false arrest and malicious prosecution of the Plaintiff.  NYPD failed to provide a complete and full disclosure of their investigation to the District attorney's office including that an initial investigation determined the matter to be a civil one, that the metal rail removed by the Plaintiff  was located on her property, that there was no order by DOB directing the plaintiff not to remove the rail, and that there was no evidence of any lawsuit lost by Plaintiff to the Pacheco & Lugo defendants granting them adverse possession of Plaintiff's Property.

63.     Defendants acted collectively and in bad faith to deprive Plaintiff of her constitutional rights not to be deprived of liberty without probable cause.

64.     Defendants acted collectively to deprive Plaintiff of her constitutional rights not to be prosecuted maliciously without probable cause.

65.     The acts of the Defendants, itemized herein, were committed solely for the purpose of depriving Plaintiff of her constitutional rights.

66.     Defendants' acts proximately caused Plaintiffs damages and injuries, including but not limited to pain and suffering and emotional distress.

67.     Upon information and belief, John Doe Police officers, employees of Defendant City, with deliberate disregard for proper, lawful, appropriate, correct and effective investigative behaviors and procedures, detained and arrested Plaintiff when it was not right, just, lawful, proper, or necessary to do so, and maliciously, deliberately and recklessly disregarded the patent and verifiable indicators of the false, fraudulent, malicious and untrue complaint of the Pacheco & Lugo Defendants.

68.     Upon information and belief, and without proof that Plaintiff was in any way connected or related to a crime, or in fact that any crime was committed by the Plaintiff and without reasonable nor probable cause to detain or arrest her, Defendant CITY's employees, including WHITE, HIDALGO and John Doe Police officers, individually and acting in concert, knowingly, unlawfully and wrongfully fabricated a charge against the Plaintiff and set it forth in a false and fabricated criminal felony complaint, sworn to by Defendant Betty Lugo on November 30, 2018.  A copy of the false and fraudulent complaint is annexed hereto as Exhibit 1, and is made part hereof with the same force and effect as if it were fully set forth here at length.

69.     The Felony Complaint, Exhibit 1, was and is false and fraudulent in alleging that Plaintiff committed Criminal Mischief in the Third Degree in violation of New York Penal Law 145.05 (2) and Criminal Mischief in the Fourth Degree in violation of New York Penal Law 145.00 (1), and in alleging the facts therein set forth, alleged to constitute those charges based upon the false criminal complaint prepared, upon information and belief by the CITY's employees , and signed by Defendant Lugo, the Criminal Court of the City of New York, County of Kings arraigned Plaintiff on the above charges.

70.     On September 7, 2021, in the County of Kings and State of New York, employees of Defendant City, including John Doe Police Officers, acting in concert with each other and acting in concert with the individual Defendants, maliciously and with intent to injure Plaintiff, and without just cause or any right to do so, handcuffed Plaintiff, and detained her and restrained her of her liberty, against the will of the Plaintiff.

71.     The arrest of the Plaintiff was perpetrated and orchestrated by the individual Defendants without a warrant or other legal process and without probable cause.

72.     Defendants acted maliciously and intentionally.

73.     Plaintiff was thereupon and thereafter detained and restrained of her liberty and freedom, on account of the unlawful and wrongful acts of the Defendants, and was confined in the precinct lock up before eventually released from such confinement and detention.

74.     Thereafter the Plaintiff was forced to return to court on multiple occasions over a period of nine months, appearing in public, and before the public as a Defendant, an attorney accused of criminal acts, acts of which the Plaintiff was not guilty.

75.     The charges against Plaintiff were disposed of in her favor by the New York City

Criminal Court, dismissed on the application of the Richmond County DA after the Special

Prosecutor's investigation.

76.     As a direct and proximate result of the acts of the Defendants, Plaintiff has suffered

permanent damages including but not limited to:

        a)  Violation of her rights pursuant to the Fourth and Fourteenth
           Amendments to the United States Constitution to be free from an
           unreasonable search and seizure of their person;

        b)  Violation of her right to Due Process of Law under the Fourteenth
           Amendments to the United Stated Constitution;

        c)  Violation of her New York State Constitutional rights under
           Article 1, Section 12 to be free from an unreasonable search and
           seizure;

        d)  Violation of her New York State Constitutional rights under
           Article 1, Section 6 to due process;

        e)  Physical pain and suffering;

        f)  Emotional trauma and suffering, including fear, embarrassment,
           humiliation, emotional distress, frustration, mental and
           psychological injuries extreme inconvenience, anxiety;

        g)  Loss of liberty.

77.     The acts of the Defendants violated the following clearly established and well settled

federal constitutional rights of Plaintiff, including but not limited to the freedom from

unreasonable seizure of her person.

## FIRST CAUSE OF ACTION
### Pursuant to §1983 (FALSE ARREST )

78.    Paragraphs 1 through 77 are hereby realleged and incorporated herein by reference.

79.    That the Defendants had neither valid evidence for the arrest of Plaintiff nor legal cause or excuse to seize and detain her.

80.    That the Pacheco & Lugo Defendants acting in concert with each other and in concert with NYPD under color of law made false statements and fabricated evidence to procure the false arrest of the Plaintiff without probable cause.

81.    That the actions of Pacheco & Lugo were willful, intentional and wanton.

82.    That in arresting Plaintiff without a fair and reliable determination of probable cause, Defendant CITY abused its power and authority as a policymaker of the NYPD under the color of State and/or local law.

83.    Upon information and belief, it was the policy and/or custom of Defendant CITY to inadequately supervise and train its officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

84.    As a result of the above described policies and customs, the officers, staff, agents and employees of defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

85.    The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the CITY to the constitutional rights of persons of color and was a basis for the violation of Plaintiff's rights herein.

86.     By reason of Defendants' acts and omissions, Defendant, CITY, acting under color of State law and within the scope of its authority, in gross and wanton disregard of Plaintiff's rights, deprived her of the  right to due process of law and  subjected her to an unlawful detention in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

87.     Defendants falsely arrested Plaintiff and failed to intervene in each other's obviously illegal actions.

88.     Defendants intentionally deprived Plaintiff of her rights due to her status as a black individual and acted with racial animus.

89.     By reason of the foregoing, Plaintiff suffered mental injuries, deprivation of liberty, humiliation, damage to reputation and other psychological injuries.  All of said injuries may be permanent.

## SECOND CAUSE OF ACTION
### Pursuant to §1983 (MALICIOUS PROSECUTION)

90.     Paragraphs 1 through 89 are hereby realleged and incorporated herein by reference.

91.     That Defendants with malicious intent, orchestrated the arrest of  Plaintiff and initiated a criminal proceeding despite the knowledge that Plaintiff had committed no crime.

92.     That Pacheco & Lugo Defendants acting in concert with each other and in concert with NYPD under color of law maliciously prosecuted the Plaintiff without probable cause.

93.     That the actions of Pacheco & Lugo were willful, intentional and wanton.

94.     That by reason of Defendants' acts and omissions, defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of her liberty when they maliciously prosecuted her and subjected her to an unlawful, illegal detention in violation of her rights pursuant agreed to the Fourth and Fourteenth Amendment of the United States Constitution.

95.     That upon information and belief, Defendant, CITY, had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause.  That as a result of the above described policies and customs, Plaintiff was maliciously prosecuted despite the fact that she had committed no violation of the law.

96.     Upon information and belief, it was the policy and/or custom of Defendant CITY to inadequately hire, train supervise and discipline and/or terminate its officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

97.     That as a result of the above described policies and customs, the officers, staff, agents and employees of defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

98.     That the above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the CITY to the constitutional rights of persons of color and was a basis for the violation of Plaintiff's rights herein.

99.     That in so acting, defendant, CITY abused its power and authority as policy maker of the NYPD under the color of stare and/or local law.

100.    That upon information and belief, in 2018, Defendant, CITY, had a policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit.

101.    By reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, damage to reputation, shame humiliation and indignity.  All of said injuries may be permanent.

## THIRD CAUSE OF ACTION
### Pursuant to §1983( FAILURE TO INTERVENE)

102.    Paragraphs 1 through 101 are hereby realleged and incorporated herein by reference.

103.    Each of the Defendants failed to intervene when each of them knew or should have known that Plaintiff's constitutional rights were being violated.

104.    Defendants had a realistic opportunity to intervene on behalf of Plaintiff whose constitutional rights were being violated in their presence.

105.    That a reasonable person in the defendants' position would know that Plaintiff's constitutional rights were being violated.

106.    That by reason of Defendants' acts and omissions, defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights, deprived Plaintiff of her liberty when they failed to intervene to prevent the unlawful arrest and malicious prosecution of the Plaintiff in violation of her constitutional rights.

107.    That upon information and belief, Defendant, CITY had a policy and/or custom of failing to intervene to protect citizens from unlawful police actions.  Thus, as a result of the above described policies and customs, Plaintiff was not protected from Defendants' unconstitutional actions

108.    Upon information and belief, it was the policy and/or custom of Defendant CITY to inadequately hire, train supervise and discipline and/or terminate its officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

109.    That as a result of the above described policies and customs, the officers, staff, agents and employees of defendant CITY believed that their actions would not be properly monitored by

supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

110.    That the above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the CITY to the constitutional rights of persons of color and was a basis for the violation of Plaintiff's rights herein.

111.    That in so acting, defendant, CITY abused its power and authority as policy maker of the NYPD under the color of stare and/or local law.

112.    That upon information and belief, in 2018, Defendant, CITY, had a policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit.

113.    That by reason of the foregoing, Plaintiff suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, damage to reputation, shame humiliation and indignity.  All of said injuries may be permanent.

## CONSPIRACY

114.    Paragraphs 1 through 113 are hereby realleged and incorporated herein by reference.

115.    Defendants agreed to violate the Plaintiff's rights in the manner described above.

116.    Defendants conspired to deprive Plaintiff of her civil rights.

117.    Defendants acted on said conspiracy with intent to deprive the Plaintiff of equal protection, and equal privileges and immunities, under the law, and Plaintiff was thereby harmed.

118.    Defendants took action in furtherance of this agreement by arresting Plaintiff and bringing charges against her.

119.    That upon information and belief defendants had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause.  Thus, as a result of the above

described policies and customs, Plaintiff was maliciously prosecuted despite the fact that he committed no violation of the law.

120.    Plaintiff was injured as a result of Defendants' conspiracy.  Plaintiff was deprived her of the  right to due process of law and  subjected her to an unlawful detention in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

## MUNICIPAL AND SUPERVISORY LIABILITY AGAINST DEFENDANT CITY

121.    Defendants' intentional tortious acts were undertaken within the scope of their employment by Defendant City of New York and in furtherance of the Defendant City of New York's interest.

122.    Defendant CITY knew or should have known of its employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

123.    Prior to and including September 7, 2018, Defendant CITY developed and maintained policies and or/customs exhibiting deliberate indifference to the constitutional rights of persons of color and  of African descent in New York City, which policies and/or customs caused the violation of Plaintiff's rights.

124.    Upon information and belief it was the policy and/or custom of Defendant, CITY to improperly and inadequately investigate citizens complaint of police misconduct, and acts of misconduct were instead tolerated by Defendant, CITY, including but not limited to incidents where Defendants and their supervisors have in the past falsely arrested persons of color or of African descents, without probable cause and issue false and fraudulent criminal complaints and accusatory instruments , to cover up and hide their wrongful conduct.

125.    It was the policy and/or custom of Defendant, CITY to fail to take steps to discipline, train supervise or otherwise correct the improper, illegal conduct of the Defendant Police Officers in this and in similar cases involving misconduct, thereby failing to adequately discourage further constitutional violations on the part of its police officers such as the Defendant Police Officers herein.

126.    As a result of the described policies and/or customs, police officers including the Defendant Police officers herein, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

127.    The above policies and/or customs demonstrated a deliberate indifference on the part of the policymakers of the CITY to the constitutional rights of persons within the CITY, and were the cause of violations of Plaintiff's rights alleged herein.

128.    As a result of the wrongful, deliberately indifferent and illegal acts of Defendant, CITY, Plaintiff claims damages against Defendant, CITY, for the injuries set forth above.

129.    Defendant CITY, by its agents, servants and employees, subjected Plaintiff to false arrest, assault, false imprisonment, malicious prosecution, embarrassment, shame and public humiliation and mental anguish.

130.    As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

131.    Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the loss of liberty and mental abuse sustained by Plaintiff.

132.    Defendant CITY, through the NYPD, owed a duty of care to Plaintiff because under the

same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to Plaintiff or those in a position similar to Plaintiff's as a result of this conduct.

133.   Defendant City's negligence in hiring and retaining the officer Defendants, proximately caused Plaintiff's injuries.

134.   Defendant CITY is liable for the damages suffered by the Plaintiff as a result of the conduct of its agents, servants and employees.

## **CONSTITUTIONAL TORT**

135.   The above paragraphs are hereby incorporated by reference.

136.   Defendants, acting under color of law, violated Plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

137.   By reason of the foregoing, Plaintiff suffered mental and psychological injuries, economic injury, deprivation of liberty, humiliation, emotional trauma, post-traumatic stress and damage to reputation.  A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of Plaintiff's rights under those sections.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered:

1.   Awarding Plaintiff compensatory damages in a full and fair sum to be determined;

2.   Awarding Plaintiff punitive damages in an amount not less than $3,000,000.00;

3.   Awarding interest from June 12, 2019;

4.   Awarding Plaintiff reasonable attorney's fees pursuant to 42 USC 1988; and

5.   Granting such other and further relief as to this Court deems proper.

Dated: Brooklyn, New York
      June 22, 2022

Yours, etc.

CLOVER M. BARRETT
Pro-Se
338 Atlantic Avenue, Suite 201
Brooklyn, New York 11201
(718) 797-4284
cbarrettpc@aol.com

## VERIFICATION

STATE OF NEW YORK    )
                                  ) ss.:
COUNTY OF KINGS     )

CLOVER M. BARRETT, being duly sworn, deposes and says:

I am the plaintiff in this action, and as such I am familiar with the facts and circumstances of this case. I have read the foregoing Amended Complaint and know the contents thereof. The contents of the Complaint are true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
CLOVER M. BARRETT

Sworn to before me this 23rd day of June 2022

_____
Notary Public

EDWARD H. KING
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02KI5024732
Qualified in Kings County
Commission Expires March 14, 2026